IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GREATER BIRMINGHAM MINISTRIES, et al.,<br><br>                              Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY, UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES,<br><br>                              Defendants. | Civil Action No. _____ |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL COMPLIANCE WITH THIRD-PARTY SUBPOENA ON THE DEPARTMENT OF HOMELAND SECURITY**

# TABLE OF CONTENTS

Page(s)

I. Introduction ........................................................................................................ 1

II. Background ........................................................................................................ 3

III. Legal Standard ................................................................................................... 5

IV. Argument ............................................................................................................ 6

    A. Plaintiffs' Requests Do Not Constitute an Undue Burden .................... 6

    B. No Law Prohibits Compliance with Plaintiffs' Requests ..................... 9

V. Conclusion ........................................................................................................ 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Exxon Shipping Co. v. U.S. Dep't of Interior,*
  34 F.3d 774 (9th Cir. 1994) ........................................................................................... 6

*Greater Birmingham Ministries et al v. State of Alabama et al,*
  Case No. 2:15-cv-02193-LSC (M.D. Ala.) ............................................................ 1, 10

*McIntyre v. Ohio Elections Comm'n,*
  514 U.S. 334 (1995) ...................................................................................................... 9

*N.C. State Conference of NAACP v. McCrory,*
  831 F.3d 204 (4th Cir. 2016) ........................................................................................ 9

*Reynolds v. Sims,*
  377 U.S. 533 (1964) ...................................................................................................... 9

*South Carolina v. United States,*
  898 F. Supp. 2d 30 (D.D.C. 2012) ............................................................................... 9

*United States ex rel. Touhy v. Ragen,*
  340 U.S. 462 (1951) .................................................................................................. 5, 6

*Veasey v. Abbott,*
  Case No. 13-cv-00193-NGR ............................................................................. *passim*

*Watts v. SEC,*
  482 F.3d 501 (D.C. Cir. 2007) .................................................................................. 5, 6

**Other Authorities**

Fed. R. Civ. P. 45 ............................................................................................................ 5, 6

9 Moore's Federal Practice § 45.05[1][b] (3d ed. 2006) ................................................... 5

## I. Introduction

Plaintiffs move the Court to enforce the third-party subpoena served on the United States Citizenship and Immigration Services of the U.S. Department of Homeland Security ("USCIS") in connection with a pending lawsuit challenging Alabama's photo ID voter law. *See Greater Birmingham Ministries et al v. State of Alabama et al*, Case No. 2:15-cv-02193-LSC (M.D. Ala.).

The information sought by the subpoena is limited, straightforward, and now routine in voting rights lawsuits challenging photo ID laws. Indeed, it is the same type of information, generated by substantively the same procedure, that the USCIS already provided in a challenge to the Texas photo ID law.

The subpoena simply seeks documents sufficient to permit Plaintiffs' experts to match (1) the individuals to whom the USCIS has issued photo IDs to (2) the Alabama registered voters who have not already been matched to a valid ID issued by the Alabama Law Enforcement Agency ("ALEA"). Such evidence is relevant to establishing both the number of Alabama voters who are disfranchised by Alabama's Photo ID Law, as well as the disparate impact of that requirement on African-American and Latino voters.

USCIS has refused to produce this information on the grounds of undue burden and that compliance would violate various privacy-related statues. In an effort to mitigate the USCIS's concerns, Plaintiffs have offered—in lieu of the

production called for by the subpoena—to permit the USCIS to perform the matching analysis itself.

This is the very same procedure that the USCIS agreed to undertake in *Veasey v. Abbott*, Case No. 13-cv-00193-NGR, where Texas's photo ID requirement was successfully challenged. It is also the same procedure that the U.S. Department of Defense, the U.S. State Department, and the U.S. Department of Veterans Affairs have already tentatively agreed to perform in this case. But the USCIS has refused even this previously-successful compromise.

The USCIS's objections are without merit. The USCIS can easily perform the matching analysis itself or produce—under appropriate confidentiality and security requirements—the identifying information necessary to match individuals possessing federal photo IDs to the list of Alabama's registered voters. Like in *Veasey*, Plaintiffs' experts could craft the matching protocol and format the registered voter list to the specifications of the USCIS. Under this approach, USCIS would only need to initiate each matching sequence and report the results to the parties.

In fact, Plaintiffs' compromise is substantially less burdensome than that agreed to by the USCIS in *Veasey*, where the agency ran this analysis for approximately **13.5 million** registered Texas voters. Here, Plaintiffs have already removed from consideration the millions of registered Alabama voters matched to

a valid ALEA ID and are requesting that the USCIS run the analysis for just over **400,000** Alabama voters—less than 3 percent of the total in Texas. This will substantially reduce the time and burden on the agency necessary to perform the matching analysis.

For these reasons, the Court should grant Plaintiffs' motion to compel.

## II.   Background

Plaintiffs served the USCIS, the Department of Defense, the U.S. State Department, and the Department of Veterans Affairs (the "Agencies") with third-party subpoenas on June 7, 2016. *See* Declaration of Ryan M. Buschell ("Buschell Decl."), Exs. A-D. Each subpoena sought documents sufficient to permit Plaintiffs' experts to match Alabama registered voters to photo IDs issued by the federal government. *Id.* At the request of the U.S. State Department, Plaintiffs provided a detailed description of the relevance of the matching analysis sought by those subpoenas in an email dated July 5, 2016. *Id.*, Ex. E.

On July 19, 2016, counsel for the Agencies responded by letter, raising objections and asking for additional clarification. *Id.*, Ex. F. Plaintiffs and counsel for the Agencies discussed these issues by phone on July 21, 2016. *Id.*, ¶ 5. Plaintiffs formally responded on August 17, 2016 and included a proposed algorithm for the Agencies' review, *id.*, Ex. G.

The Agencies responded by letter on September 16, 2016. *Id.*, Ex. H. In that letter, the Department of Defense conditionally agreed to perform the requested matching analysis based on simplified algorithms and a protective order similar to that entered in *Veasey*. *Id.* at 2. In contrast, USCIS, the U.S. State Department and the Department of Veterans Affairs initially reported that (1) Plaintiffs' request would constitute an undue burden given their other activities; and, (2) notwithstanding the Department of Defense's tentative agreement, several statutes and regulations made it illegal for the USCIS to comply. *Id.* at 2-5.

Plaintiffs asked the Agencies to reconsider their denial in a letter dated September 27, 2016. *Id.*, Ex. I. On October 13, 2016, the U.S. State Department requested additional information about the fields that would be used to perform the matching analysis, *id.*, Ex. J, which Plaintiffs provided on October 14th, *id.*, Ex. K.

On November 4, 2016, the U.S. State Department and the Department of Veterans Affairs reconsidered their denial and tentatively agreed to perform the matching analysis subject to reaching agreement on the algorithms to be run and logistical issues. *Id.*, Ex. L. Plaintiffs are currently working with those agencies and the Department of Defense to reach an agreement on the particulars of the matching process.

Unfortunately, the USCIS has stood by its previous denial, *id.*, requiring Plaintiffs to file this motion.

## III. Legal Standard

The D.C. Circuit applies the default standards articulated in Rules 26 and 45 to motions to compel a federal subpoena served on a federal agency. *See Watts v. SEC*, 482 F.3d 501, 508 (D.C. Cir. 2007). Under Rule 45, a subpoena may be quashed where it would cause an undue burden or where it calls for privileged matter. *See* Fed. R. Civ. P. 45.

Under this legal standard, the Court provides no special deference to an agency's internal determination that production would be burdensome or call for privileged material. The internal regulations promulgated to guide agency employees when responding to subpoenas (called *Touhy* regulations[1]), can provide the framework for agencies to decide whether to voluntarily comply with a subpoena. Such regulations, however, cannot preclude the Court from ordering production of what would otherwise be permitted under the Federal Rules. *See, e.g.*, 9 Moore's Federal Practice § 45.05[1][b] (3d ed. 2006) ("[T]he legal basis for any opposition must derive from an independent source of law, such as a governmental privilege or the rules of evidence or procedure.").

The D.C. Circuit and virtually all other federal jurisdictions have found that the deference afforded to the internal determinations of federal agencies when they

---

[1] The name derives from the Supreme Court's decision in *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951) in which the Court reversed a contempt order entered by a federal district court against an FBI agent who had defied a deposition subpoena in accordance with a Department of Justice regulation.

resist a subpoena *issued by a state court* do not apply to subpoenas issued by a federal court, as is the case here. *See, e.g., Watts*, 482 F.3d at 508-509 (finding that *Touhy* regulations cannot preclude production and that Rule 45 guides a federal district court's inquiry, rather than the Administrative Procedures Act); *Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 778 (9th Cir. 1994) ("Such limitations do not apply when a federal court exercises its subpoena power against federal officials.").

Accordingly, this motion to compel should be treated under the same default Rule 45 standards that would govern any other federal subpoena served on a third party.

### IV. Argument

The USCIS argues that Plaintiffs' subpoenas should be quashed because the requests (a) constitute an undue burden given the other activities of the USCIS; and (b) call for the production of information that "would violate a statute or rule of procedure." Buschell Decl., Ex. H at 4. These objections are unfounded.

#### A.   Plaintiffs' Requests Do Not Constitute an Undue Burden

The USCIS asserts that performing the matching analysis they agreed to (and did) perform in connection with the *Veasey* case "would take multiple employees weeks or perhaps even months, using money and other resources that

are currently needed to complete projects vital to the mission of their agencies." *Id.* at 2. The USCIS grossly overstates the burden of Plaintiffs' requests.

The matching analysis will require only a small fraction of the time estimated by the USCIS. This is because a majority of the hours spent to perform such an analysis involves normalizing and formatting the fields to be matched and designing the algorithms that will be used in the analysis. *See* Declaration of Bryan Niederberger ("Niederberger Decl.") at ¶ 3. These are the tasks that *Plaintiffs* have offered to perform. Once complete, all that remains to be done is to input the formatted fields through the pre-determined algorithms and let the computer run. *Id.* at ¶ 4. That Plaintiffs request that the USCIS match just over 400,000 records (as opposed to the 13.5 million records at issue in *Veasey*) further diminishes the already minimal burden and expense.[2]

Plaintiffs' experts estimate that—once the fields are formatted and the algorithms determined—the total time required for a person of ordinary skill to perform the matching analysis would be no more than 20 hours to input and quality check the queries,[3] with a few extra hours spent while the computer processes the results. *Id.* at ¶ 5. If Plaintiffs' experts were to perform this analysis themselves,

---

[2] Plaintiffs have also proposed simpler, more streamlined algorithms than those run in *Veasey* to further minimize the burden on the USCIS. *See* Buschell Decl., Ex. G.

[3] The USCIS is a highly-sophisticated organization with its own in-house technical staff. Plaintiffs expect it will be able to perform these analyses in substantially less time than this slowest reasonable estimate.

7

they estimate it would take no longer than 4-8 hours to input and quality check the queries, with the same hours spent waiting for results. *Id.* at ¶ 6.

Nor should the Court credit the USCIS's argument that the cumulative burden of its participation in lawsuits challenging photo ID requirements warrants quashing the subpoena. *See* Buschell Decl., Ex. H at 4 ("Because of the proliferation of lawsuits over voter identification requirements, Denying Respondents could be subjected to similar requests for matching analyses in the future, and the attendant cumulative burden of honoring all such requests would be enormous.").

Plaintiffs have taken every available step to minimize the burden on the USCIS, including (1) providing pre-formatted data to the USCIS's specifications; (2) designing the matching protocol; and (3) providing the minimum possible records for matching by removing those already matched to an ALEA ID. These actions have reduced the burden on the USCIS to no more than 20 hours, but likely closer to only a single day's work. The potential need to provide such minimal assistance in each of the handful of photo ID lawsuits that may be filed by private litigants each year would still not constitute an undue burden.

In short, there is simply no reasonable argument that this nominal time expenditure constitutes an undue burden. This is especially true here, where the pending lawsuit in Alabama implicates the right to vote, which is the bedrock of

our political system. *See McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 379 (1995) ("Other rights, even the most basic, are illusory if the right to vote is undermined.") (citation omitted); *Reynolds v. Sims*, 377 U.S. 533, 555 (1964) ("The right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government.").

### B. No Law Prohibits Compliance with Plaintiffs' Requests

The USCIS has cited a litany of statutes and regulations that purportedly prohibit the disclosure of which Alabama registered voters have been issued a form of federal photo ID. Buschell Decl., Ex. H at 4-5. The Court should dismiss this argument out of hand.

The USCIS performed the same type of matching analysis in the *Veasey* case, and elsewhere produced the same output from their databases that Plaintiffs request here.[4] Unless the USCIS admits that it violated these same statues and regulations in 2012, 2013, and 2014, duplicating this exact process could not possibly lead to a violation. The fact that the Department of Defense, the U.S. Secretary of State, and the Department of Veterans Affairs have all tentatively

---

[4] *See, e.g., N.C. State Conference of NAACP v. McCrory*, 831 F.3d 204, 231 (4th Cir. 2016) (noting that a matching analysis was performed by the United States); *South Carolina v. United States*, 898 F. Supp. 2d 30, 40 (D.D.C. 2012) (same).

agreed to perform this analysis and disclose the results to Plaintiffs cuts strongly against the USCIS's interpretation of their statutory and regulatory obligations.

Judge Coogler has taken significant measures to protect any confidential information produced in the Alabama lawsuit, including a protective order and detailed database access protocols. *See Greater Birmingham Ministries et al v. State of Alabama et al*, Case No. 2:15-cv-02193-LSC (M.D. Ala.), Dkt. Nos. 73 and 74. Although Plaintiffs believe that the existing protective order is sufficient, Plaintiffs are willing to work with the USCIS to craft any reasonable amendment to the protective order it believes is necessary in light of the federal matching analyses contemplated by Plaintiffs' subpoena.

## V. Conclusion

For the foregoing reasons, the Court should grant Plaintiffs' Motion and compel the USCIS to produce the requested documents or, in the alternative, to perform the matching analysis it agreed to undertake in *Veasey*.

DATE: December 12, 2016

Joanne B. Grossman
D.C. Bar No. 227520
James McCall Smith
D.C. Bar No. 987082
Covington & Burling LLP
One City Center

850 Tenth Street, NW
Washington, D.C. 20001-4956
Tel: 202-662-6000
Fax: 202-662-6291
jgrossman@cov.com
jmsmith@cov.com

*Attorneys for Plaintiffs*